UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-23203-CV-KING
CASE NO. 15-20241-CR-KING
MAGISTRATE JUDGE REID

JOSE LUIS MORALES,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE
## RE MOTION TO VACATE - 28 U.S.C. § 2255

### I. Introduction

Movant, **Jose Luis Morales,** filed a *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence for felon in possession of a firearm, entered following a jury verdict in **Case No. 15-20241-CR-King.** [CV ECF No. 1]. For the reasons discussed below, Movant is not entitled to relief.

This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Fla. Admin. Order 2019-02, and Rules 8 and 10 Governing Section 2255 cases in the United States District Courts. [CV ECF No. 2].

For its consideration of the Motion to Vacate [CV ECF No. 1],[1] the Undersigned has reviewed the Response [CV ECF No. 5] from the Government to this Court's Order to Show

---

[1] Citations to [CV ECF No. _] refer to docket entries in this federal § 2255 proceeding, while citations to [CR ECF No. _] refer to the docket entries in the underlying criminal case challenged here.

Cause, and Movant's Reply [CV ECF No. 10], together with relevant pleadings filed in the underlying criminal case, of which the Court takes judicial notice. *See* Fed. R. Evid. 201; *see also Nguyen v. United States,* 556 F.3d 1244, 1259 n. 7 (11th Cir. 2009) (citing *United States v. Glover,* 179 F.3d 1300, 1302 n. 5 (11th Cir. 1999)).

## II. Claims

Construing the Motion liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam*), Movant raises the following five grounds for relief:

1.  Movant's due process rights were violated when the district court failed to properly instruct the jury regarding the elements of the charged offense. [CV ECF No. 1 at 4, 13].

2.  Counsel misadvised him that the mere presence of a firearm in a residence, where Movant had "free reign," was sufficient to establish guilt which resulted in him unknowingly pleading not guilty. [CV ECF No. 1 at 5, 14].

3.  Trial and appellate counsel failed to argue that the second request for consent to enter the premises violated Movant's Fourth Amendment rights and tainted the subsequent search of the premises. [CV ECF No. 1 at 6, 15].

4.  The Government did not meet its burden of proof at trial, failing to provide sufficient evidence to corroborate Movant's post-arrest statements. [CV ECF No. 1 at 8, 16].

5.  Counsel failed to call defense witnesses and introduce evidence at trial to establish that law enforcement should have, but did not, request Movant's permission to enter the premises. [CV ECF No. 1 at 17].

### III. Procedural Background

#### A. Indictment to Verdict

Movant was charged by Superseding Indictment with a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). [CR ECF No. 7]. Movant engaged in motion practice, filing a motion to suppress physical evidence and statements made to law enforcement. [CR ECF No. 22]. The Government filed a response [CR ECF No. 28],

and an evidentiary hearing was held, after which a Report was entered recommending that the motion to suppress be denied. [CR ECF Nos. 30, 52, 100]. By Order entered on July 29, 2015, the Report was adopted and the suppression motion was denied. [CR ECF No. 35]. Movant then proceeded to trial where he was convicted as charged following a jury verdict. [CR ECF No. 74].

### B. Pre-Sentence Investigation to Judgment

Prior to sentencing, a Presentence Investigation Report ("PSI") was prepared, setting the base offense level at twenty-six, pursuant to U.S. Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(1) (2015), because the offense involved a semi-automatic weapon and Movant had at least two prior felony controlled substance offenses. [PSI ¶ 26]. Because the firearm was stolen, two levels were added to the base offense pursuant to U.S.S.G. § 2K2.1(b)(4)(A), resulting in an adjusted offense level twenty-eight. [PSI ¶¶ 13, 17]. Since the offense of conviction was a violation of 18 U.S.C. § 922(g), and Movant had at least three prior convictions for a serious drug offense, committed on different occasions, it was determined Movant qualified for an enhanced sentence as an armed career criminal, pursuant to U.S.S.G. § 4B1.4. [PSI ¶ 33]. The PSI relied upon Movant's prior convictions in Case Nos. F06-041785D and F07-020469 to support the armed career criminal enhancement, which resulted in an increase to the base offense level to a level thirty-three. [PSI ¶ 18].

Next, the probation officer determined Movant had a total of six criminal history points, resulting in a criminal history category III. [PSI ¶ 28]. Because Movant was considered an armed career criminal, pursuant to U.S.S.G. § 4B1.4(c), Movant' criminal history category was increased to a category VI. [PSI ¶ 29]. Based on a total offense level thirty-three and a criminal history category VI, the advisory guideline range was set at a minimum of 188 months to a maximum of

235 months of imprisonment. [PSI ¶ 62]. Statutorily, Movant faced a minimum of fifteen years and up to a lifetime term of imprisonment for violation of § 922(e)(1). [PSI ¶ 61].

Movant filed objections to the PSI, challenging the calculations reflected in the PSI, including his enhancement as an armed career criminal. [CR ECF No. 83]. In an Addendum to the PSI, the probation officer responded that the armed career criminal enhancement applied and the computation was accurate. [PSI Addendum at 3].

On **September 28, 2016,** Movant appeared for sentencing. [CR ECF Nos. 89, 95]. At that time, the Court heard argument from the parties regarding Movant's objections to the armed career criminal enhancement and request that the Court depart downward to the statutory minimum mandatory term of imprisonment. [CR ECF No. 95 at 36-58]. The Court considered the statements and recommendations of the parties, the PSI containing the advisory guidelines, and the 18 U.S.C. § 3553(a) factors. [*Id.* at 35-37]. The Court overruled the objections and sentenced Movant to a term of 188 months imprisonment, followed by three years of supervised release. [*Id.* at 38].

### C. Direct Appeal Proceedings

Movant prosecuted a direct appeal raising the following arguments: (1) the Court erred in denying Movant's motion to suppress evidence obtained pursuant to a warrantless search of Movant's residence without Movant's consent and lacking probable cause; (2) the Court erred in denying Movant's motion for judgment of acquittal on the basis there was insufficient evidence that Movant knowingly possessed a firearm while previously having been convicted of a felony; and, (3) the Court's imposition of the armed career criminal enhancement violated Movant's Eighth Amendment rights. *See United States v. Morales,* 893 F.3d 1360, 1367-72 (11th Cir. 2018), [CR ECF No. 106]. On **June 29, 2018**, the Eleventh Circuit Court of Appeals affirmed the

convictions and sentences in a published decision. *See Morales,* 863 F.3d at 1372. [*Id.*]. Movant did not seek certiorari review with the Supreme Court of the United States.

For purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case became final on **September 27, 2018,** when the ninety-day period for seeking certiorari review expired following the appellate court's order affirming the judgment of conviction. *See Gonzalez v. Thaler,* 565 U.S. 134, 149-50 (2012); *see also Phillips v. Warden,* 908 F.3d 667, 672 (11th Cir. 2018). At the latest, Movant was required to file this motion to vacate within one year from the time his conviction became final, or no later than **September 27, 2019.** *See* 28 U.S.C. § 2255(f)(1); *see also Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1986); *Downs v. McNeil,* 520 F.3d 1311, 1318 (11th Cir. 2008).

### D. § 2255 Motion

Movant timely filed his § 2255 Motion to Vacate on **July 29, 2019,** by signing and handing the Motion to prison officials for mailing. [CV ECF No. 1 at 12]. *See Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (*per curiam*).

### IV. Threshold Issues

### A. Timeliness of § 2255 Motion

The Government concedes correctly that this § 2255 Motion was timely filed under 28 U.S.C. § 2255(f)(1), having been filed within a year of when Movant's conviction became final. [CV ECF No. 15 at 13].

### B. Procedural Default

Movant's grounds for relief fall into three broad categories: (1) trial court error; (2) ineffective assistance of counsel; and, (3) sufficiency of the evidence. The Government's argument that some claims are procedurally defaulted is addressed first below. [CV ECF No. 5 at 13-24].

1. <u>Claims **Not** Raised on Direct Appeal</u>

In **claim 1,** Movant asserts that his due process rights were violated when the Court failed to properly instruct the jury regarding the elements of the charged offense. [CV ECF No. 1 at 4, 13]. The Government argues correctly that this claim is procedurally defaulted because Movant could have but did not raise this constitutional issue on direct appeal. [CV ECF No. 5 at 17]. Movant then argued for the first time in his Reply that his claim could not have been raised on direct appeal because it was previously unavailable, relying on the recent Supreme Court decision in *Rehaif v. United States,* 139 S. Ct. 2191 (2019). [CV ECF No. 10 at 2].

In any event, whether raised as a due process violation or a *Rehaif* claim, the Government's argument that claim 1 is procedurally defaulted is correct because it could have been, but was not, raised on direct appeal.

Pursuant to the procedural default rule, a prisoner may move the sentencing court to vacate his sentence under 28 U.S.C. § 2255 on the ground that his sentence was imposed in violation of federal law or the Constitution or exceeds the maximum time allowed by law. *See* 28 U.S.C. § 2255(a). However, "a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *United States v. Frady,* 456 U.S. 152, 165 (1982) (collecting cases)); *see also Massaro v. United States,* 538 U.S. 500, 504 (2003).

As such, general rules have developed that: "(1) a defendant must assert all available claims on direct appeal," and (2) "relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn*, 365 F.3d at 1232 (quotations and internal citations omitted).

When a claim is not pursued on direct appeal, it will not be considered in a motion for § 2255 relief unless Movant can establish objective cause for the default and actual prejudice resulting from the alleged constitutional violation. *See Massaro,* 538 U.S. at 504; *see also Spencer v. Sec'y, Dep't of Corr.,* 609 F.3d 1170, 1179-80 (11th Cir. 2010); *Vega v. United States,* 719 F. App'x 918, 919 (11th Cir. 2019) (*per curiam*) (citing *Lynn*, 365 F.3d at 1234); *Rose v. United States,* 738 F. App'x 617, 624 (11th Cir. 2018) (*per curiam*) (citing *McCay v. United States,* 657 F.3d 1190, 1196 (11th Cir. 2011)).

Cause for not raising a claim can be shown when a claim "is so novel that its legal basis was not reasonably available to counsel." *Rose,* 738 F. App'x at 626 (quoting *Bousley v. United States,* 523 U.S. 614, 622 (1998)). Here, assuming without deciding that a *Rehaif* claim was not reasonably available, so as to provide cause for failing to raise it on direct appeal, Movant cannot demonstrate prejudice.

To demonstrate prejudice, Movant must show "'more than just the possibility of prejudice;'" rather, he must show that "the error 'work[ed] to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Ward v. Hall*, 592 F.3d 1144, 1178-79 (11th Cir. 2010) (quoting *Frady*, 456 U.S. at 170). Movant does not discuss prejudice in his Motion, however, on Reply he argues that "the instructions as made were overbroad and allowed the jury to convict [him] for innocent conduct," which "the Constitution forbids." [CV ECF No. 10 at 2]. However, this is not sufficient to excuse his procedural default because binding precedent requires that Movant show more than the "possibility" of prejudice, and Movant himself admits that "[o]n the existing record, an objective reviewer cannot determine whether the jury convicted [him] for non-criminal conduct." [*Id*. at 3]. Accordingly, Movant has

failed to show that the error "worked to his actual and substantial disadvantage," and this claim should be dismissed.

Finally, even absent a showing of cause and prejudice, under exceptional circumstances, Movant may also obtain federal review of a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Bousley,* 523 U.S. at 622; *Lynn,* 365 F.3d at 1234-35 (quoting *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994) (*per curiam*)). "Actual innocence" means factual innocence, not mere legal insufficiency. *Bousley,* 523 U.S. at 623; *Mills,* 36 F.3d at 1055-56 (citing *Murray v. Carrier,* 477 U.S. 478, 490-92 (1986)).

As applied, Movant has not demonstrated that he is factually innocent. In fact, the Eleventh Circuit observed that the evidence presented was more than sufficient to support Movant's conviction. *See Morales,* 893 F.3d at 1371.

Since Movant has not demonstrated cause and prejudice, much less that a fundamental miscarriage of justice will result if claim 1 is not reviewed on the merits, claim 1 should be procedurally barred from review in this proceeding.

2. Claims **Raised and Rejected** on Direct Appeal

In **claim 3,** Movant asserts that counsel at trial and on appeal failed to argue that the second request for consent to enter the premises violated Movant's Fourth Amendment rights and tainted the subsequent search of the premises. [CV ECF No. 1 at 6, 15]. The substantive issue underlying this ineffective claim was raised as Issue I on direct appeal. *See* Movant's Brief, *United States v. Morales,* 2017 WL 948063 at *14-*22 (11th Cir. 2017). In **claim 4,** Movant asserts that the Government did not meet its burden of proof at trial, failing to provide sufficient evidence to

corroborate Movant's post-arrest statements. [CV ECF No. 1 at 8, 16]. This claim was raised in relation to Issue II on direct appeal. *See* Movant's Brief, *Morales,* 2017 WL 948063 at *22-*34.

The Government argues that claims 3 and 4 are procedurally barred from review because the substantive issue underlying the ineffective claims were raised and rejected on direct appeal. [CV ECF No. 5 at 13-29]. Movant is procedurally barred from raising arguments in a § 2255 motion, under the guise of an ineffective assistance of counsel claim, when the substance of the claim was raised and rejected on direct appeal. *See United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000) (finding once a claim has been decided adversely to a defendant on direct appeal it cannot be relitigated in a § 2255 motion)); *see also Stoufflet v. United States,* 757 F.3d 1236 (11th Cir. 2014) (citing *Nyhuis,* 211 F.3d at 1343); *Mills,* 36 F.3d at 1056.

*(a) Claim 3*

As applied, the substantive issue underlying **claim 3** was raised on direct appeal by Movant, who argued that he was physically present and a co-occupant of the resident at the time of the warrantless search. *See* Movant's Brief, *Morales,* 2017 WL 948063 at *15. Movant argued on direct appeal, as he does here, that law enforcement intentionally did not give him the opportunity to express his desire that they not enter the residence without a search warrant. *See id.* Movant claimed he was handcuffed and sitting on the ground in front of the residence, not far from the front door, so that law enforcement could have sought his consent, especially since the officers knew he resided there, and knew his identity, having a photograph of Movant in their possession. *See id.* Thus, Movant concludes that the failure to request his consent violated his Fourth Amendment rights. *See id.* at *17.

The Eleventh Circuit rejected Movant's arguments, affirming the denial of Movant's suppression motion, noting that "when a shared dwelling is involved, co-occupants can generally

9

give valid consent to a search if that person has 'joint access or control' over the area." *See Morales,* 893 F.3d at 1369 (quoting *United States v. Matlock,* 415 U.S. 164, 171 n. 7 (1974)). The Eleventh Circuit held that "it was reasonable for the officers to believe" Berta Lang, who also lived in the residence with Movant, and "had access to the entire house," including Movant's bedroom, going in there "to clean and take care of the kids," "had enough common authority over the house (and Morales' bedroom in particular) to give valid consent to search." *Id.* at 1370.

Given the foregoing, the presentation of the claim in this § 2255 proceeding, under the guise of an ineffective assistance of counsel claim, adds nothing of substance to justify reconsideration of the claim. Therefore, this claim is procedurally barred and should be dismissed.

*(b) Claim 4*

Regarding **claim 4,** Movant argued on appeal that there was insufficient evidence to support his conviction. *See Morales*, 893 F.3d at 1370. Specifically, Movant claimed that "the government failed to present enough evidence to corroborate his confession." *Id.*

The Eleventh Circuit first noted that "it's true that a defendant's uncorroborated confession is not enough to support a conviction." *Id.* at 1370-71 (citing *Smith v. United States,* 348 U.S. 147, 152 (1954)). Instead, the Government is required to "introduce substantial independent evidence to establish the trustworthiness of the confession," but such evidence need not be proven "beyond a reasonable doubt, or even by a preponderance" of the evidence. *Id.* (citations omitted). The corroborating evidence to support the confession need only be enough "to justify a jury's inference of [its] truth." *Id.* at 1371 (citations omitted).

The Eleventh Circuit rejected Movant's argument, affirming Movant's conviction on the finding that Movant "told the officers that he found both of the guns; he brought them into the house; and he placed them inside the closet in his bedroom in the very bag where the guns were

later found." *Id.* The Eleventh Circuit concluded there "was enough evidence at trial to corroborate that confession," finding the government introduced the guns, ammo, and bag into evidence, and an officer testified these items were "found in Morales' bedroom closet on the night of the search," along with "a pair of men's boxers in the bag and a letter to Morales (with the house's address on it) in the room." *Id.*

Given the foregoing, **claim 4** is also procedurally barred where, as here, it was raised and rejected on direct appeal, and Movant offers nothing of substance to warrant a different result. Accordingly, this claim should be dismissed.

### (c) Claim 5

The Government's argument that claim 5 is also procedurally barred for the same reasons as claims 3 and 4 above is not entirely accurate and should be rejected. Here, Movant alleges counsel was ineffective for failing "to produce law enforcement records and witnesses that showed at the time of the search Mr. Morales had unimpeded access to the officers and the house, which meant law enforcement violated a settled Fourth Amendment rule." [CV ECF No. 1 at 17]. Construed liberally, Movant suggests counsel failed to call witnesses and introduce evidence at trial to rebut the Government's evidence. That claim is not procedurally barred and is cognizable for federal habeas review.

### V. Standard of Review

### A. Section 2255

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded  the maximum authorized  by

law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States,* 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *See Frady,* 456 U.S. at 165; *see also Lynn,* 365 F.3d at 1232. If a court finds a claim under § 2255 valid, the court shall vacate and set aside the judgment, and discharge the prisoner, grant a new trial, or correct the sentence. *See* 28 U.S.C. § 2255. The burden of proof is on Movant, not the government, to establish that vacatur of the conviction or sentence is required. *See Beeman v. United States,* 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

## B. Ineffective Assistance of Counsel Principles

Where, as here, a defendant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984). However, if Movant cannot meet one of *Strickland*'s prongs, the court need not address the other prong. *See id.* at 697; *see also Brown v. United States,* 720 F.3d 1316 (11th Cir. 2013). The *Strickland* standard applicable to ineffective assistance of trial counsel claims also governs of ineffective assistance of appellate counsel. *See Corales-Carranza v. Sec'y, Fla. Dep't of Corr.,* 768 F. App'x 953, 957 (11th Cir. 2019) (*per curiam*) (quoting *Brooks v. Comm'r, Ala. Dep't of Corr.,* 719 F.3d 1292, 1300 (11th Cir. 2013) (*per curiam*) (internal quotation marks omitted)).

To show deficient performance, a movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). With regard to the prejudice requirement, Movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have

been different. *See Strickland,* 466 U.S. at 694. Counsel, however, has no duty to raise non-meritorious claims. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014). Courts may not vacate a conviction or sentence solely because the outcome would have been different, but for counsel's error, as it may grant the defendant a windfall to which the law does not entitle him. *See Lockhart v. Fretwell,* 506 U.S. 364, 369-70 (1993); *see also Allen v. Sec'y, Fla. Dep't of Corr.,* 611 F.3d 740, 754 (11th Cir. 2010). Bare and conclusory allegations of ineffective assistance are also insufficient to satisfy the *Strickland* test. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333-34 (11th Cir. 2012).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). The *Strickland* test does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *See Dingle v. Sec'y, Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007). In retrospect, where counsel's decision appears to have been unwise, it will have been ineffective only if it was "so patently unreasonable that no competent attorney would have chosen it." *Id.*

A meritorious claim of ineffective assistance of counsel can, however, constitute cause for a procedurally defaulted claim. *See Nyhuis,* 211 F.3d at 1344. Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised in a § 2255 motion, regardless of whether they could have been brought on direct appeal. *See Massaro,* 538 U.S. at 503; *see also United States v. Patterson,* 595 F.3d, 1324, 1328 (11th Cir. 2010).

## VI. Facts Adduced at Trial

Because Movant raises claims relating to the testimony of government witnesses and evidence introduced at trial, the facts, as succinctly narrated by the Eleventh Circuit on direct appeal follows:

> One day in December 2014, police received an anonymous tip that a white Hispanic male was selling drugs out of a certain house in Miami Gardens. Over the next few months, police detective Phillip Torres--a twenty-four year law enforcement veteran--was able to link Jose Morales to the man described in the tip.
>
> The neighborhood around the house was experiencing a rash of gun and drug crime. So much so that an anti-gang task force was targeting that area. And it just so happened that Torres was a member of that task force. On night in March of 2015, an officer in an unmarked car was driving through the neighborhood around the house as part of the task force's operations. She saw a Ford Mustang with several people standing around it that was improperly parked outside the same house that Torres had been investigating. Around ten to twenty members of the task force were called out to the area, including Torres.
>
> When Torres arrived at the house, he saw some of the other officers speaking with the men who had been standing by the car. He recognized one of those men as Morales. As Torres approached the house, a woman appeared at the front door. She peeked out to see what was going on and went back inside. Torres spoke with Morales, who told him that the woman was his girlfriend's mother, Berta Lang, and that she lived at the house with him, his girlfriend, and their young children.
>
> Torres went to the front door of the house and knocked, calling out: "Police!" According to him, no one answered. According to Lang, however, she heard the knocking but refused to open the door unless the officers had a warrant.
>
> Torres stopped knocking and talked to his supervisor, who sent him back to the door with another officer who spoke Spanish. That officer was Sergeant Jorge Rodriguez. The two went back to the front door and knocked. After thirty second or so, Lang answered the door. Rodriguez spoke to her in Spanish. He told her that they were police officers, that there had been a complaint at the house, and that they would like to talk with her about it. Rodriguez then asked her if they could come inside, which Lang said was okay.
>
> She brought them into the living room just inside the door. Once inside, Rodriguez told Lang that they were 'conducting a criminal investigation,' and that they were there to get her consent to search the house. He asked her if she lived at the house, and she responded that she did. She told him that she was the leaseholder and that her daughter, Morales, and their two small children (Lang's grandchildren) lived

14

there too. Rodriguez then asked if she had access to the entire house, including her daughter's and Morales's room, and Lang responded that she did. She told him that she goes in there to clean the room and take care of the kids. Rodriguez asked if they could search the house. Lang said that 'she d[id]n't know about anybody else' who lived in the house, but that she had 'nothing to hide.' Rodriguez explained to her that she had the right to refuse to consent--then or at any point later one--and it was okay if she wanted them to get a search warrant first. But Lang 'insisted' that they could search and repeated that she had nothing to hide.

After Lang gave the officers her verbal consent to search, Rodriguez went outside and told his supervisor, who said they needed her signed written consent before sending the K-9 unit inside. So Rodriguez took a 'consent to search' form inside to Lang. The form was in English, but Rodriguez translated it into Spanish for her, line by line. He explained to her (in Spanish) that the form concerned her consent and told her that she had a right to refuse consent and insist on a search warrant. Lang said it was okay for them to search the house and signed the form.

Lang wasn't handcuffed or otherwise restrained during that conversation or thereafter, and the officers didn't have their guns drawn. Neither did they yell, threaten, or put any pressure on Lang to sign the form. According to the officers, Lang was very 'calm' and 'professional' when they spoke. And according to Lang, the officers never threatened her.

Once the consent form had been signed, a dog named "Bond" came in with his handler to search the house. Bond alerted to the bottom left side of the closet in the Morales' bedroom. Officers found a red and black striped bag in the closet with a pair of men's boxers and two firearms: a Rossi .38 caliber revolver (also known as a .38 special) and a .22 caliber pistol. There were also four .38 caliber bullets loose in the bag that matched the .38 special. The officers searched the rest of the bedroom and found in the nightstand a letter to Morales with the address of the house on it. They then arrested Morales.

The officers took Morales to the station for questioning. Torres and Rodriguez read him his *Miranda*[2] and interviewed him. Morales acknowledged that he understood his rights; he signed a *Miranda* waiver and gave a DNA sample. The interview, all of which was recorded, lasted about thirty minutes, and during it Morales confessed.

Morales confirmed that he had been living in the house for two years and stayed in the room where the guns were found. He admitted that 'the two guns are mine' and that everything else that was found in the bag belonged to him. He said that he found the .38 special by a canal while fishing and had found the .22 caliber pistol in an abandoned house. He brought both of the firearms home without anyone else knowing about it.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

When the officers asked him where he had put the firearms when he brought them home, Morales responded that he had put them in the closet inside the red and black bag the officers had found there earlier. He said that both guns were his, that he kept them for protection, and that his family didn't know they were in the house. He admitted that he knew that as a convicted felon he shouldn't have had the firearms, lamenting that 'I put myself in this mess.'

Morales confirmed to the officers that he was telling the truth, that no one coerced him, and that he had understood all of their questions. He was, he said, 'guilty' and '[t]hat's the honest truth.'

*See Morales,* 893 F.3d at 1364-65, [CR ECF No. 106].

## VII. Discussion

Because **claims 1, 3, and 4** are procedurally defaulted from review, the only two remaining claims that will be discussed on the merits below are **claims 2 and 5.** Upon such a review, Movant is not entitled to relief on either remaining claim.

### A. Misadvice by Counsel

In **claim 2,** Movant asserts that counsel and law enforcement[3] misadvised him "that the mere presence of the firearm within a residence in which he had free reign in was sufficient to establish guilt[]" which resulted in Movant "unintelligently pleading not guilty." [CV ECF No. 1 at 5, 14]. Simply put, this makes no sense. Essentially, Movant is alleging that police, and later his attorney, misadvised him by telling him that the bar to convict him was lower than it really was (and thus, that it would be *easier* for the Government to convict him than it really was), which caused him to unknowingly plead *not guilty*. This is illogical because, even assuming this to be true, if Movant was told that the Government essentially had a slam dunk case against him, there

---

[3] Movant's claim of misadvice from law enforcement in an ineffective assistance of counsel claim is improper because law enforcement is not counsel. Movant's claim could be denied on this basis alone.

is no basis to conclude that it would cause him to plead not guilty to a crime he would have otherwise pleaded guilty to.

To the extent that Movant later argues that this "misadvice" "resulted in [Movant taking] the wrong trial strategy," this claim still fails because Movant was not misadvised in the first place and because he fails to articulate any trial strategy that would have likely resulted in his acquittal.

First, Movant fails to describe how he would have changed his trial strategy if he had been given correct advice. All that he says is that "he would have presented a different defense at trial and establish that he was actually innocent of the crime." [CV ECF No. 1 at 14]. Where a defendant was convicted a trial, he must prove that there is a reasonable probability that, absent counsel's alleged error, the jury would have acquitted him of the offense. *See Strickland*, 466 U.S. at 695. Movant has not made any showing that a different, unelaborated, strategy would have even potentially resulted in his acquittal.

Second, Movant was not misadvised because at the time of Movant's trial, the elements to sustain a conviction under § 922(g)(1) were that: (1) the defendant was a felon; (2) the defendant knowingly possessed a firearm or ammunition; and (3) the firearm or ammunition traveled in interstate commerce. *See United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003), *abrogated by Rehaif*, 139 S. Ct. at 2200[4]. Movant stipulated that he was a convicted felon (because he was a convicted felon), and that the firearms travelled in interstate commerce (because the firearms did travel in interstate commerce), so only the second prong was at issue in his trial. *See*

---

[4] To the extent that counsel failed to anticipate the change in the law after *Rehaif*, counsel cannot be found to be ineffective for failing to anticipate future changes in the law. *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'") (citations omitted); *see also Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986) ("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law").

*Morales*, 893 F.3d at 1371. Counsel's alleged misadvice pertains to this second prong, possession, and Movant does not allege that he would have challenged the first or third prongs at trial.

As the Eleventh Circuit explained in Movant's appeal, "'[p]ossession under § 922(g)(1) includes constructive possession." *Id*. (citing *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011)). Thus, "Morales could be convicted of § 922(g)(1) if he was aware of the gun's presence and had the ability and intent to exercise dominion and control over it then or later." *Id*. Looking back to what Movant claims counsel's misadvice was - "that the mere presence of the firearm within a residence in which he had free reign in was sufficient to establish guilt[]" - it is clear that he was not misadvised in any significant way because this language generally tracks with the law regarding possession under § 922(g). *See Perez*, 661 F.3d at 576. Though Movant's Motion can be liberally construed to take issue with whether he had intent to exercise control of the firearms, this analysis is only relevant to the issue of constructive possession, not actual possession, and there is significant evidence that Movant actually possessed the firearm, as discussed below.

Movant's claim also fails because he cannot show prejudice. Where a defendant was convicted a trial, he must prove that there is a reasonable probability that, absent counsel's alleged error, the jury would have acquitted him of the offense. *See Strickland*, 466 U.S. at 695. Here, Movant argues that his plea of *not guilty* was unintelligent, however because Movant maintains he is not guilty, there is no prejudice. Apart from this obvious deficiency, there is no reasonable probability that Movant would have been acquitted because there was significant evidence that Movant did possess the firearm, which was the only disputed element of the § 922(g)(1) offense. Critically, Movant confessed to law enforcement to possessing the firearm, which he says he found and took home for protection. This statement was made before counsel's alleged misadvice, which quite simply destroys his ineffectiveness theory.

In his Reply, Movant takes a completely different tone and raises new arguments not contained in his initial Motion. [CV ECF No. 10 at 3]. There, he asserts his right to a fair trial was compromised because his counsel misunderstood the law and conducted inadequate research and investigation. [*Id*.]. Also for the first time, Movant claims to have an attached an e-mail from counsel stating that he should have "objected" at trial to the government's introduction of testimony concerning the second firearm, on the basis of a "discovery violation" or "fatal variance," but counsel admits "did not do so." [*Id.* at 4]. However, no e-mail was attached to Movant's Reply. Further, this new evidence or argument raised for the first time in Movant's Reply should be rejected. *See* Fed. R. Civ. P. 15(a); R. 12 of the Rules Governing Section 2255 Proceedings.

In the Reply, Movant gives "[t]wo examples of counsel's inadequate preparation that resulted in an unfair trial." The first is simply Movant's original argument that he was misadvised regarding the liability for having a firearm at his home, which has been extensively disproven above. The second, however, is the new allegation that his attorney admitted that there were "discovery violations" or "fatal variances" between the evidence at trial and the indictment. Movant has not demonstrated a discovery violation, and even if he did, it has no bearing on his claim that he was misadvised regarding the possession element of § 922(g)(1). Further, the Government filed multiple responses to the Court's standing discovery order, disclosing to the defense the contents of the bag and evidence seized from Movant's bedroom. On this record, Movant cannot demonstrate deficiency or prejudice under *Strickland* arising from any purported misadvice. Movant was advised early on of the charge against him, and testimony was presented by the Government at the Movant's pre-trial detention hearing to support the offense and pre-trial detention. Movant's suggestion that he was unaware of the elements required to prove the offense

of conviction is refuted by the record. Movant has failed to demonstrate a discovery violation. Even if counsel had misadvised Movant, as alleged, Movant cannot establish *Strickland* prejudice because he has not offered any other potential strategy or defense he would have pursued, but for the purported deficiency.

Moreover, there was more than sufficient evidence adduced at trial to establish that Movant did, in fact, possess the firearms. Thus, he cannot demonstrate that the outcome of the proceeding would have been different, but for the purported error. Given the foregoing, Movant is not entitled to relief on this claim.

As for a "fatal variance," Movant suggests, without objective evidence, that counsel should have sought dismissal of the charges on the basis that there was a constructive amendment or material-fatal variance between the Indictment and the proof at trial. [CV ECF No. 1 at 14].

A "fundamental principle" of the Fifth Amendment is that a defendant "'can only be convicted for a crime charged in the indictment' because '[i]t would be fundamentally unfair to convict a defendant on charges of which he had no notice.'" *See United States v. Johnson,* 2020 WL 2299603 at *1 (11th Cir. 2020) (*per curiam*) (quoting *United States v. Keller,* 916 F.2d 628, 632-33 (11th Cir. 1990)). A "constructive amendment" to an indictment occurs when, for example, "a fault jury instruction . . . broadens the possible bases for conviction beyond" the essential elements of the offense contained in the indictment. *See Feldman,* 931 F.3d at 1260 (quoting *United States v. Madden,* 733 F.3d 1314, 1318 (11th Cir. 2013) (quoting *Keller,* 916 F.2d at 634). Thus, "so long as the indictment contained the essential elements of the crime charged, the particular offense conduct of which the defendant was convicted is identifiable, and the defendant was not prejudiced by the deviation from the indictment, no constructive amendment occurred,

and therefore there is no *per se* reversible error." *Williams v. United States,* 785 F. App'x 692, 700 (11th Cir. 2019) (*per curiam*) (citations omitted).

"In contrast, 'a variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same.'" *Id.* (quoting *Keller,* 916 F.2d at 634). The Eleventh Circuit has made clear that a variance occurs, requiring reversal on appeal where the charged offense and the evidence presented at trial is "material, and the material variance prejudiced the defendant." *Johnson,* 2020 WL 2299603 at *1 (citing *United States v. Richardson,* 532 F.3d 1279, 1284 (11th Cir. 2008)). "Prejudice" is "measured in terms of whether the defendants were deprived of fair notice of the crimes for which they were being tried, and whether the spillover of the proof of other crimes prejudiced them." *Id.* (citing *United States v. Glinton,* 154 F.3d 1245, 1252 (11th Cir. 1998)).

The test to ascertain whether a material variance between the indictment and the evidence introduced at trial occurred requires "viewing the evidence in the light most favorable to the government," and then determining whether "a reasonable trier of fact could have found" that a single offense existed beyond a reasonable doubt. *Id.* at *2 (citing *Richardson,* 532 F.3d at 1284).

Looking to the record, at the conclusion of the evidence, the Court instructed the jury that Movant had been charged with "unlawfully possessing a firearm and ammunition after having previously been convicted of a felony." [CR ECF No. 98 at 170-73]. The Court further instructed that it is a federal offense for anyone who had previously been convicted of a felony to possess a firearm and/or ammunition in or affecting interstate or foreign commerce. [*Id.*]. In that regard, the Court instructed that Movant could only be found guilty of the offense if the Government proved beyond a reasonable doubt: (1) that Movant knowingly possessed a firearm and/or ammunition in

or affecting interstate or foreign commerce, and; (2) that before possession the firearm and/or ammunition, Movant had been convicted of a felony. [*Id.*].

The jury was further instructed that the Government was not required to prove, based on the parties' stipulation, that Movant knew the firearm and ammunition had traveled from one state or another, in interstate commerce. [*Id.*]. Rather, the primary issue before the jury was "possession," and the jury was instructed that "a person may have actual possession, constructive possession, sole possession or joint possession." [*Id.*]. The jury was advised that "joint possession of a thing occurs if a person knowingly has direct physical control over that item or thing. Constructive possession of a thing occurs if a person does not have actual possession of it, but has both the power and the intention to take control of it at a later time. Sole possession of a thing occurs if the person is the only one to possess it. Joint possession occurs if two or more persons share possession of that item." [*Id.*]. The Court also instructed that the term "possession" includes actual, constructive, sole and joint. [*Id.*].

As applied, the evidence adduced at trial established Movant exercised, at a minimum joint or constructive possession of the firearm(s) and ammunition. As will be recalled, the firearms and ammunition were found in his bedroom closet, inside a bag containing his boxer shorts. He shared that room with his girlfriend, Jennifer Lang. There was mail addressed to the Movant found in that bedroom. Lang further admitted that the firearms belonged to the Movant. Moreover, Movant's post-arrest statements were introduced in which he admitted that he brought the firearms into the house, placed them inside his bedroom closet, in the bag later discovered by law enforcement. *See Morales,* 893 F.3d at 1371. On this record, Movant cannot demonstrate that there was a constructive amendment or material variance between the charged offense and the evidence adduced at trial. Thus, Movant cannot demonstrate deficient performance or prejudice under

*Strickland* arising from counsel's purported failure to seek dismissal on the charges on that bases. Therefore, he is not entitled to relief on this claim.

### B. Failure to Call Defense Witness & Introduce Evidence

In **claim 5,** Movant asserts that counsel failed to "produce" or call "defense witnesses and introduce evidence at trial" to establish that law enforcement should have, but did not, request Movant's permission to enter the premises. [CV ECF No. 1 at 17]. According to the Movant, he had "unimpeded access to the officers and the house," therefore law enforcement violated Movant's Fourth Amendment rights by failing to request his consent to search the premises. [*Id*.]. In his Reply, Movant again provides no evidence to support his claim of alleged ineffectiveness. *See* [CV ECF No. 10 at 5].

Movant has not provided the identity of the witnesses that counsel should have called or demonstrated that they would have been available and willing to testify as he suggests at trial. Further, Movant also does not identify the documents he believes should have been introduced at trial to support his theory and contradict the Government's evidence.

Given the more than sufficient evidence adduced at trial and lack of specificity as to the nature of this claim, Movant has not demonstrated that counsel's deficiency resulted in prejudice. *See Fugate v. Head,* 261 F.3d 1206, 1239, n. 54 (11th Cir. 2001). This is fatal to Movant's claim. Movant cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Dep't of Corr.,* 290 F.3d 1318, 1324 (11th Cir. 2002) (*per curiam*).

Further, this Court should not second-guess counsel's decision to not conduct any further investigation or introduce witnesses or evidence at trial. *See Conklin v. Schofield,* 366 F.3d 1191, 1204 (11th Cir. 2004); *see also Dorsey v. Chapman,* 262 F.3d 1181, 1186 (11th Cir. 2001) (finding

a movant not entitled to relief because counsel's decision to not call an expert witness was not so patently unreasonable that no competent attorney would have chosen the strategy); *United States v. Costa,* 691 F.2d 1358, 1364 (11th Cir. 1982) (*per curiam*).

It cannot be said that counsel's decision was not within the range of reasonable professional competence. *See Raulerson v. Warden,* 928 F.3d 987, 998 (11th Cir. 2019) (quoting *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess.")); *see also Chandler,* 218 F.3d at 1314 (holding that counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy") (quoting *Darden v. Wainwright,* 477 U.S. 168 (1986)).

Further, Movant cannot demonstrate *Strickland* prejudice because his "allegations of what a witness would have testified to" is "largely speculative." *Sullivan v. DeLoach,* 459 F.3d 1097, 1109 (11th Cir. 2006) (quoting *United States v. Guerra,* 628 F.2d 410, 413 (5th Cir. 1980) (*per curiam*)). Speculation about what further testimony or evidence would have established will not establish *Strickland* prejudice. *See Conklin,* 366 F.3d at 1204.

On this record, Movant has not established deficiency or prejudice arising under *Strickland*. Thus, relief on this claim is not warranted.

## VIII. Cautionary Instruction Re *Clisby*[5] Rule

The Court is mindful of the *Clisby* rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *See Rhode v. United States,* 583 F.3d 1289, 1291 (11th Cir. 2009) (*per curiam*) (holding that *Clisby*

---

[5] *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

applies to § 2255 proceedings). However, nothing in *Clisby* requires consideration of claims or arguments raised for the first time in objections.

If Movant attempts to raise arguments or further factual support for his claims in objections, the court should exercise its broad discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance. *See Williams,* 557 F.3d at 1291 (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge). Further, where a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## IX. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on Movant to establish the need for a federal evidentiary hearing. *See Jones v. Sec'y, Fla. Dep't of Corr.,* 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *See id.* at 1318-19 (quoting *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007)). Even when considering the alleged facts as true, no evidentiary hearing is required because the facts are fully developed in the record before this Court. *See Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).

## X. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his § 2255 motion has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See Jackson v. United States,* 875 F.3d 1089, 1090 (11th Cir. 2017) (*per curiam*) (citing 28 U.S.C.

§ 2253(c)(1)). This Court should issue a COA only if Movant makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

Where a district court has rejected Movant's constitutional claims on the merits, Movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, Movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

Upon consideration of the record, the Court should deny a certificate of appealability. Notwithstanding, if Movant does not agree, he may bring this argument to the attention of the District Judge in objections.

## XI. Recommendations

Based on the foregoing, it is recommended that:

1.      The Motion to Vacate [CV ECF No. 1] be DENIED;

2.      Final judgment be entered in favor of Respondent;

3.      That no certificate of appealability issue; and,

4.      The case CLOSED.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

Signed this 5th day of August, 2021.

UNITED STATES MAGISTRATE JUDGE

cc:     Jose Luis Morales, *Pro Se*
        Reg. No. 06022-104
        F.C.I. - Coleman Low
        Inmate Mail/Parcels
        Post Office Box 1031
        Coleman, FL 33521